Arthur SPENCE, Employee-Appellant,

v.

UNIVERSITY OF DELAWARE, Employer-Appellee.

George GANT, Employee-Appellant,

v.

PHOENIX STEEL CORP., Employer-Appellee.

Supreme Court of Delaware.

Oct. 18, 1973.

Norman A. Barron, Deputy Atty. Gen., Wilmington, for appellants.

B. Wilson Redfearn, of Tybout, Redfearn & Schnee, Wilmington, for appellees.

CAREY and DUFFY, JJ., and MARVEL, Vice Chancellor, sitting.

DUFFY, Justice:

The sole question on this appeal is whether the Industrial Accident Board Second Injury and Contingency Fund (Fund) is obliged to reimburse certain insurance carriers for payments they have made to employees under the Workmen's Compensation Act.

### I

These consolidated cases involve claims by two employees (plaintiffs), each of whom sustained successive permanent injuries. Each claimant was totally disabled (by the second such injury) as that term is defined in 19 Del.C. § 2324.[1] Since payments were made to each claimant, the only issue involves ultimate responsibility for them. Specifically, is the "total dis-

ability" part of each payment to be borne by the Fund or by the respective employers (or their carriers) (defendants)?[2] The Industrial Accident Board determined that the Fund was not obligated for the payments. The Superior Court reversed the Board. We think that the Court was right but upon a somewhat different rationale than it adopted.

### II

19 Del.C. § 2327 provides:

"Whenever a subsequent permanent injury occurs to an employee who has previously sustained a permanent injury, from any cause, whether in line of employment or otherwise, the employer for whom such injured employee was working at the time of such subsequent injury, shall be required to pay only that amount of compensation as would be due for such subsequent injury without regard to the effect of the prior injury. Whenever such subsequent permanent injury in connection with a previous permanent injury results in total disability as defined in section 2326 of this title, the employee shall be paid compensation for such total disability, as provided in section 2324 of this title, during the continuance of total disability, such compensation to be paid out of a special fund known as 'industrial accident board second injury and contingency fund'."

Second injury funds have been adopted in all but four states. Their purpose, widely applauded, is to divide responsibility for successive disabling injuries resulting in total disability between the employer last in time and a broader spectrum of the community. This kind of equitable apportionment is essential to eliminate discrimination against previously impaired workers, many of whom would otherwise be

---

1. 19 Del.C. § 2324 provides in part that,
   "For injuries resulting in total disability, the compensation to be paid during the continuance of total disability shall be 66⅔ percent of the wages of the injured employee . . ."
   with certain maximum and minimum limits.

2. The Attorney General appears for plaintiffs as the defender of the Fund.

dropped from the labor market. See 2 Larson Workmen's Compensation Law § 59.30. 19 Del.C. § 2327 brings this salutary policy to Delaware by creation of the Fund, which is financed by an assessment on insurance carriers and self-insured employers. 19 Del.C. § 2395.

Turning now to the specific language in 19 Del.C. § 2327, the first sentence thereof limits the obligation of the second or subsequent employer for aggravation of a prior permanent injury. The statute does not, of course, limit a claim by the employee. The second sentence of the section, on which we focus here, provides for the source of the compensation which the employee will receive over and above that due him for the second injury, standing alone. In short, it provides for the "total disability" payments. These are to be paid from the Fund when the conditions required by the Act are met. Those are, (a) a previous permanent injury and (b) a subsequent permanent injury which (c) results in total disability. In these cases to this point, the parties are in agreement about the statute. They divide on the kind of "total disability" which must result in order to permit a claim over against the Fund. The statute, of course, merely says that it is the kind of total disability which is "defined in section 2326".

Looking now to § 2326, plaintiffs say that the total disability described therein involves the loss of body members (hand, arm, foot, etc.), insanity, paralysis and other specified disabilities; and, they continue, since it is tacitly conceded that neither plaintiff has a disability of the specified kind, it follows that the Fund is not obliged to compensate them. Plaintiffs argue that § 2326 is clear and, although it may be undesirable to limit use of the

Fund, any change must come from the General Assembly.

The Superior Court concluded that the Fund is responsible for such total disability as falls within the ambit of § 2326(e);[3] citing Magness Construction Company v. Waller, Del.Supr., 269 A.2d 554 (1970), the Court reasoned that the term must be given a broader definition than the Board used.

As we see § 2327, it refers to § 2326 in the most general way. The reference is broad and unlimited. Nothing is said about any section, paragraph or part of or in § 2326. It states only that the Fund is liable for "total disability as defined in section 2326". And, as already indicated, § 2326 contains a long listing of specific kinds of injuries and disabilities; but a careful review of the entire statute shows that nowhere therein is "total disability" defined. It is true that paragraph (e) uses the term, but only as to the kind of injuries specified (loss of both hands, or arms, e. g.) causing "total disability". Magness Construction Company v. Waller, supra. We think that for present purposes to focus only on paragraph (e) is to read § 2327 too narrowly.

We conclude that the General Assembly intended to make the Fund responsible in a (second accident) total disability case, whatever the nature of the second injury, as long as the resulting total disability is within the ambit of any part of § 2326. In the absence of a specific definition, we conclude that the General Assembly intended to vest the Board with power to determine when there is a total disability resulting in a claim upon the Fund.

In saying this we note the long catalogue of specifics in § 2326 and the language of

3.  19 Del.C. § 2326(e) states:
    "Unless the Board otherwise determines from the facts, the loss of both hands, or both arms, or both feet, or both legs, or both eyes, or an injury to the spine resulting in permanent and complete paralysis of both legs, or both arms, or one leg and one arm, or an injury to the skull resulting in incurable imbecility or insanity, shall constitute total disability for work, to be compensated according to the provisions of section 2324 of this title.
    .   .   ."

certain subsections; paragraph (d), for example, refers to permanent impairment of the "usefulness of a member or any physical function", and paragraph (g) directs the Board to award proper compensation for the loss of any member or part of the body (or loss of use thereof) for which compensation is not otherwise provided. It seems clear to us that, given the broad range of discretion vested in the Board by the very language of § 2326, the General Assembly intended to give it the power to determine if and when there is "total disability" under the terms of § 2327. Cf. Air Mod Corporation v. Newton, Del. Supr., 215 A.2d 434 (1965), and compare Bigelow v. Sears-Roebuck & Company, Del.Supr., 260 A.2d 906 (1969); M. A. Hartnett, Inc. v. Coleman, Del.Supr., 226 A.2d 910 (1967).

The judgment of the Superior Court is affirmed.