**NASTASI–WHITE, INC., Appellant Below, Appellant,**

v.

**Lawrence FUTTY, et al., Appellees Below, Appellees.**

Supreme Court of Delaware.

Submitted: Feb. 25, 1986.

Decided: June 5, 1986.

 

Court Below—Superior Court for the State of Delaware in and for New Castle County C.A. No. 84A–SE–2.

J.R. Julian (argued) and Roger A. Brown, J.R. Julian, P.A., Wilmington, for appellant.

John Biggs, III (argued), Biggs & Battaglia, Wilmington, for appellee-cross appellant.

James J. Hanley (argued) and James A. Littman, Dept. of Justice, Wilmington, for appellees.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

MOORE, Justice.

Appellant, Nastasi-White, Inc., appeals a decision of the Superior Court which upheld a determination by the Industrial Accident Board (the Board) granting compensation to employee Lawrence Futty and denying reimbursement to Nastasi-White from the Industrial Accident Board Second Injury and Contingency Fund. Futty has cross-appealed that part of the decision upholding the termination of his temporary disability pay after six months. The Superior Court found that there was sufficient evidence before the Board to support the finding of a compensable injury, and that claimant Futty had suffered no prior permanent injury which would qualify Nastasi-White for reimbursement from the "second injury fund" established pursuant to 19 *Del.C.* § 2327. The Superior Court also held that the Board had properly limited Futty's compensation, although Futty retained the right to a petition to prove he is a displaced worker.

Nastasi-White appeals on the ground that Futty's pre-existing medical condition of osteoperosis must be considered an "injury" under 19 *Del.C.* § 2327, thereby qualifying Nastasi-White for reimbursement under the second injury fund. On cross-appeal, Futty argues that under 19 *Del.C.* § 2347 the Board must first make an award and then hold a subsequent hearing following proper petition and notice before it can "terminate" an award by limiting its duration to six months. We find no merit in either the appeal or the cross-appeal and affirm the decision of the Superior Court.

I.

At the time of the injury, Futty was a 62-year-old employee of Nastasi-White, a construction company. In the course of his duties at work on January 6, 1984, Futty lifted a box weighing approximately 50 pounds and suffered a cracked vertebra, causing him tremendous pain. Eventually, nerves had to be cut to alleviate the pain.

At the Board hearing, medical testimony was offered that the cracked vertebra was caused in part by Futty's pre-existing condition of osteoperosis, a bone condition affecting those in advancing years which causes the bones to become brittle and crack easily. The Board found that the osteoperosis was the result of Futty's natural aging process, and that the compression fracture was caused by the lifting incident which, therefore, was a compensable injury. The Board also found that Futty was totally disabled from January 6, 1984 to June 30, 1984, but that because all the testifying doctors agreed that Futty could return to work with some limitations, he was not a displaced worker. Finally, the Board denied Nastasi-White's application for reimbursement from the second injury fund, because Futty had no prior permanent injury but instead suffered from a pre-existing condition caused solely by natural aging.

The Superior Court affirmed the Board's finding of a compensable injury as sup-

ported by substantial evidence, and concurred with the Board's reasoning in denying reimbursement from the second injury fund. The court also ruled that the Board acted in compliance with the law in terminating Futty's benefits with sufficient notice and a hearing, and that Futty was not barred from a future petition to prove that he was a displaced worker.

## II.

### A.

■ We first address Nastasi-White's contention that it is entitled to reimbursement from the second injury fund.

By 19 *Del. C.* § 2327, when a subsequent permanent injury in connection with a previous permanent injury results in total disability, during the continuation of the total disability compensation is to be paid out of the second injury fund.[1] The purpose of such a fund is to "divide responsibility for successive disabling injuries resulting in total disability between the employer last in time and a broader spectrum of the community." *Spence v. University of Delaware*, Del.Supr., 311 A.2d 867, 868 (1973). This apportionment is designed to prevent discrimination against previously impaired workers. *Id.* Insurers and self-insurers have the right to reimbursement from the second injury fund for payments made under Section 2327. *Price v. All American Engineering Co.*, Del.Supr., 320 A.2d 336, 342 (1974).

"Injury" as defined in 19 *Del. C.* § 2301(12) is "violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compen-

sable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment." Section 2327 uses the term "injury," and a previously sustained permanent injury, "from any cause, whether in line of employment or otherwise," will qualify a claimant with a subsequent permanent injury for compensation from the second injury fund. 19 *Del. C.* § 2327. Nevertheless, "injury" as defined in Section 2301(12) includes only those diseases which are compensable occupational diseases or which "naturally result[ ] directly" from "violence to the physical structure of the body." 19 *Del. C.* § 2301(12). It was established at the Board hearing that Futty's osteoperosis was a pre-existing condition caused not by any work-related trauma but by the natural process of aging. Therefore, Futty's osteoperosis does not fall under the applicable definition of "injury," and is not a "previously sustained permanent injury" as is required under Section 2327 before Nastasi-White may recover from the second injury fund.

Nastasi-White argues by analogy that as with the "unusual exertion rule," this Court should use any pre-existing impairment or injury as the standard for application of the second injury fund. Appellant also urges that as a matter of policy, denial of second injury fund reimbursement in cases such as Futty's will inevitably lead to lesser employment opportunities for older workers. Nevertheless, these arguments must fail in the face of the clear language in Sections 2301(12) and 2327.

### B.

We next turn to Futty's contention on cross-appeal that with no award having

---

1. The statute reads as follows:

Whenever a subsequent permanent injury occurs to an employee who has previously sustained a permanent injury, from any cause, whether in line of employment or otherwise, the employer for whom such injured employee was working at the time of such subsequent injury shall be required to pay only that amount of compensation as would be due for such subsequent injury without regard to the effect of the prior injury. Whenever such subsequent per-

manent injury in connection with a previous permanent injury results in total disability as defined in § 2326 of this title, the employee shall be paid compensation for such total disability, as provided in § 2324 of this title, during the continuance of total disability, such compensation to be paid out of a special fund known as "Industrial Accident Board Second Injury and Contingency Fund." 19 *Del. C.* § 2327.

been made, nor an agreement reached prior to the hearing, the Board was without statutory authority to "terminate" his award by limiting its duration to six months, because an award or agreement may only be terminated at a subsequent hearing following the filing of a petition. Futty argues that by Section 2347 compensation "shall not terminate until and unless the Board enters an award ending the payment of compensation after a hearing upon review of an agreement or award ..."[2] Futty also argues that under *Huffman v. C.C. Oliphant & Son, Inc.*, Del.Supr., 432 A.2d 1207, 1209 (1981), if the employee does not consent to the termination of compensation, payments must be continued until the Board determines, after a hearing on the merits, that compensation should end.

■ Futty's argument is misplaced. Under 19 *Del.C.* § 2345, when the employer and employee fail to reach agreement as to compensation, the Board shall, after proper notice and hearing, determine the matter in accordance with the facts and the law.[3] The Board concluded that Futty would be totally disabled for a six-month period, and upon such a determination the Board has no power to award compensation beyond that period. Futty was on notice that Nastasi-White sought to limit his benefits, because one of the contentions listed by the employer in the pre-trial memorandum was that "[t]he period of total disability is not

as alleged." The Board's determination of Futty's compensation under Section 2345 was proper.

Section 2347 provides a procedure whereby either party can seek to terminate or modify an agreement or award, and does not require the filing of a separate petition to limit an award not yet granted. The *Huffman* case cited by Futty is inapposite, as it involved the unilateral termination by the employer of an agreement which was already in effect. Taking Futty's argument to its absurd extreme, the Board at an initial hearing could grant only open-ended total disability awards terminable only at a subsequent hearing under a separate petition. The disability compensation scheme created by Title 19 does not mandate such a cumbersome procedure.

■ Futty also argues that the Board improperly concluded, *sua sponte*, that Futty was not a displaced worker. Because this contention was not raised in the Superior Court, we need not address it now. Supreme Court Rule 8; *Jenkins v. State*, Del.Supr., 305 A.2d 610 (1973). However, even if we were to consider it, we note that there is no harm to Futty. Futty did not raise the issue himself in his petition to the Board, so he cannot now argue before this Court that he should be found to be a displaced worker. All the parties, as well as the Superior Court, agree that

---

2. The statute reads in relevant part:

On the application of any party in interest on the ground that the incapacity of the injured employee has subsequently terminated, increased, diminished or recurred or that the status of the dependent has changed, the Board may at any time, but not oftener than once in 6 months, review any agreement or award.

On such review, the Board may make an award ending, diminishing, increasing or renewing the compensation previously agreed upon or awarded, and designating the persons entitled thereto, subject to this chapter, and shall state its conclusions of facts and rulings of law....

Compensation payable to an employee, under this chapter, shall not terminate until and unless the Board enters an award ending the payment of compensation after a hearing upon review of an agreement or award, provided that no petition for review, hearing or an order by

the Board shall be necessary to terminate compensation where the parties to an award or an agreement consent to the termination. 19 *Del.C.* § 2347.

3. The relevant provision of the statute:

If the employer and the employee, or his dependents in case of his death, fail to reach an agreement in regard to compensation under this chapter, or if after they reach such an agreement the Board shall refuse to approve the same, either party may notify the Board of the facts, and the Board shall thereupon, after notice of the time and place of hearing served on all parties in interest, personally or by registered mail, hear and determine the matter in accordance with the facts and the law and state its conclusion of fact and rulings of law. 19 *Del.C.* § 2345.

Futty may petition the Board to determine whether he is displaced. Given these circumstances, we see no reason to disturb the decision below.

### III.

The Superior Court was correct in upholding the Board's ruling that Nastasi-White is not entitled to reimbursement from the second injury fund, and that Futty's total disability compensation must terminate after six months. Futty may petition the Board to determine whether he is entitled to further compensation as a displaced worker. For the reasons outlined above, the decision of the Superior Court is hereby

AFFIRMED.