# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MATTHEW WILLIAMS,      )
           )
     Appellant,       )
           )
       v.        )     C.A. No. N22A-05-002 JRJ
           )
DELAWARE         )
THOROUGHBRED RACING   )
COMMISSION,       )  )
           )
     Appellee.      )

Date Submitted:  April 13, 2023
Date Decided:  May 18, 2023

## MEMORANDUM OPINION

*Upon Claimant's Appeal from the Decision of the Delaware Thoroughbred Racing Commission:* **AFFIRMED**.

Michael L. Vild, Esq., Cross & Simon, LLC, 1105 North Market Street, Suite 901, Wilmington, DE 19801.  Attorney for Appellant.

Bradford J. Beilly, Esq., Beilly & Strohsahl, P.A., 1144 S.E. 3rd Avenue, Fort Lauderdale, FL 33316.  Attorney for Appellant.

Adria B. Martinelli, Esq., Deputy Attorney General, Delaware Department of Justice, 820 North French Street, Wilmington, DE 19801.  Attorney for Appellee.

**Jurden, P.J.**

# I.  INTRODUCTION

This is an appeal from a decision of the Delaware Thoroughbred Racing Commission ("DTRC" or "Commission") to uphold the penalties imposed by the Board of Stewards ("Stewards") against Appellant Matthew Williams ("Williams"). After considering the parties' briefs, the record below, and the determinations of the Commission, the Court concludes that the Commission's decision must be **AFFIRMED.**

# II.  BACKGROUND

## A.  Facts

On June 9, 2021, the Delaware Park Racetrack hosted the annual Obeah Stakes race.[1] Williams, a horse trainer and Florida resident, entered thoroughbred racehorse "Dream Marie" into the 8th race of the day.[2]  Dream Marie placed first, earning the first-place purse prize of $60,000.[3]  Following the race, a blood sample was taken from Dream Marie and sent to Industrial Laboratories for testing.[4]  The sample returned results showing the presence of the drug aminocaproic acid ("Amicar").[5]  Williams requested a split sample, which was retested, confirming the

---

[1] Williams' Opening Br. 3, Trans. ID 68212501.
[2] DTRC Hr'g Tr. 5:14-18.
[3] Stewards' Ruling, R 31.
[4] DTRC Hr'g Tr. 5:18-20.
[5] *Id.* 3-8; *see also* Stewards' Exs. 2, 3.

positive result.[6]  Under the DTRC Rules and the ARCI's Uniform Classification

Guidelines for Foreign Substances,[7] Amicar is a prohibited substance at any level.[8]

## B.    Procedural History

### 1.  Stewards' Ruling

On August 21, 2021, based on the presence of Amicar in Dream Marie's post-race blood sample, the Stewards issued a Ruling finding Williams in violation of DTRC Rules 15.1.1, 15.1.3, 15.3.1, and 15.18.[9]  In accordance with their decision, the Stewards assigned Williams 0.5 penalty points, disqualified Dream Marie from her first-place win, and required Williams to forfeit the $60,000 purse.[10]  Williams appealed the Stewards' Ruling to the Commission.

### 2.  Commission Hearing

The Executive Director of the Racing Commission ("Crane") received notice of Williams' appeal on August 24, 2021.[11]  Rather than schedule the hearing for September, Crane scheduled the hearing before the Commission for October 13,

---

[6] DTRC Hr'g Tr. 6:13-19.

[7] Association of Racing Commissioners International ("ARCI").  The DRTC has adopted the ARCI Uniform Classification Guidelines for Foreign Substances.  3 Del. Admin. C. § 1001-15.18.

[8] 3 Del. Admin. C. § 1001-15.1.1.  *See also* Stewards' Ex. 8, at 22, 29.

[9] Transcript R.135, 4:1-7. The Stewards also cited rules 7.3.1, 7.3.6, 15.3.2, and 15.19 in their Ruling.

[10] DTRC Hr'g Tr. 4:8-13.

[11] *Id.* at 51:14-15.

2021.[12]  Williams subsequently requested a continuance on October 5, 2021, to obtain a quantification of the amount of Amicar in Dream Marie's blood sample.[13] Crane granted it, rescheduling the hearing for November 17, 2021.[14]  Williams subsequently asked for a second continuance, requesting that the hearing be scheduled in January after a meeting of the Racing Medication & Testing Consortium ("RMTC").[15]  Crane denied the request for a second continuance.

On November 17, 2021, the Commission conducted a public hearing.[16]  Ms. Kembra S. Lydia-Moore, Esq. ("Ms. Lydia-Moore"), appearing on behalf of the Stewards, testified to the facts as stipulated by the parties and offered Exhibits 1-10 into evidence.[17]  Ms. Lydia-Moore testified that Dream Marie's blood, as tested, contained Amicar on the day of the race; that Amicar is a prohibited substance under the DTRC rules; and that Williams, as her trainer, was responsible for that

---

[12] *Id.* at 51:15-16.  Crane testified that the Stewards' attorney and counsel for the Commission in this appeal scheduled the hearing later than usual as a courtesy, due to her full schedule.  *Id.* at 51:16-19,52:18-24.

[13] *Id.* at 5.  Williams submitted the sample for retesting by Texas A&M Laboratory to have the amount of Amicar quantified.  The lab determined that "the amount of Amicar [was] 26.7 nanograms per milliliter of blood serum."  Williams' Opening Br. 6.

[14] DTRC Hr'g Tr. 51:20-22.

[15] *Id.* at 54:10-18.

[16] In addition to offering testimony on the merits of the appeal, Williams' counsel again moved for a continuance of the hearing until January.  *Id.* at 66:22-23.  Williams' counsel argued that the Commission should not rule until after the RMTC issues new recommendations on Amicar.  *Id.* at 67:17-18. Williams' counsel argued that updated guidelines would provide a basis for the Commission to overturn the penalty imposed by the Stewards.  The Commission ruled unanimously to deny Williams' motion for a continuance.

[17] *See generally* Stewards' Exs. 1-10.

violation.[18] In closing, Ms. Lydia-Moore asked the Commission to uphold the Stewards' Ruling, including all penalties as assigned.[19]

Counsel for Williams argued in favor of reducing or eliminating the penalty imposed by the Stewards on the basis that (1) Williams did nothing wrong in following the advice of his veterinarian to treat Dream Marie with Amicar seven days before the race, and (2) the amount of Amicar in Dream Marie's blood was so low, it does not justify the penalty.[20]

The Commissioners responded to Williams' first argument by citing the Trainer Responsibility Rule 7.3.1, stating that "the trainer is ultimately [] responsible for the condition of the horse on race day."[21] And because Williams assumed that role on June 9, 2021, he was solely responsible for the presence of prohibited medications.[22] Thus, given the presence of Amicar, the Stewards were bound by the rules of the DTRC rule the way they did.[23]

## III.  STANDARD OF REVIEW

The right to appeal a decision of the DTRC is created by statute. Under Delaware Law, "[a]ny person fined or otherwise disciplined by the Commission

---

[18] DTRC Hr'g Tr. 61:15—63:18.
[19] *Id.* at 63:17-18.
[20] *Id.* at 14:18-16:22.
[21] *Id.* at 26:21-27:1.
[22] *Id.* at 27:2-17.
[23] *Id.* at 27:18-21.

shall have a right of appeal to the Superior Court of the State."[24] When reviewing a decision on appeal from an administrative agency, the Court plays a limited role. The Court "does not weigh the evidence, determine questions of credibility, or make its own factual findings . . . [i]t merely determines if the evidence is legally adequate to support the agency's factual findings."[25] Factual findings, "if supported by evidence . . . shall be conclusive, and the Court shall be confined to questions of law."[26] Conclusions of law are reviewed *de novo*.[27] The Court will review the Commission's discretionary rulings for abuse of discretion.[28]

## IV. DISCUSSION

On appeal, Williams argues that (1) the Commission abused its discretion in refusing to hear testimony from his proffered expert witness, and (2) the Chairman's statements to Commissioner Killeen during the final vote constitute legal error.[29]

---

[24] 3 *Del. C.* § 10128(m)(2)(d).
[25] *Sewell v. Delaware River & Bay Auth.*, 796 A.2d 655, 659 (Del. Super. 2000) (internal citations omitted).
[26] 19 *Del. C.* § 3323(a).
[27] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007).
[28] *Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991).
[29] Williams' Opening Br. 9.

**A.     The Commission's Decision to Not Hear the Testimony of Appellant's Expert Witness Was Not an Abuse of Discretion**

In his opening brief, Williams argues that the Commission abused its discretion when it agreed not to hear the testimony of his proffered expert witness.[30] Under 3 Del. Admin. C. § 1001-19.5.10, at a hearing before the Commission, it "may exclude evidence that is irrelevant, immaterial or unduly repetitious."[31]

Though not citing any authority supporting his argument, Williams argues that the Commission abused its discretion, pointing to the language used in its Decision, where the Commission held Dr. Cole's testimony would be "immaterial and unduly repetitious."[32] Williams also claims that "the Commission never expressly stated at the hearing the reason why Dr. Cole was not permitted to testify."[33]

Contrary to his claims, the record reflects that the Commission did consider whether it would hear Dr. Cole's testimony, and it was only after a lengthy argument from counsel and a detailed proffer that it exercised its discretion to exclude her testimony. In reaching this decision, all five Commissioners made statements on the record expressing their view that Dr. Cole's testimony was not germane to the issue at hand. Specifically, Commissioner Killen opined that, while Dr. Cole's testimony would be "interesting," nothing she presented would change the outcome of the

---

[30] *Id.*
[31] 3 Del. Admin. Code § 1001-19.5.10.
[32] DTRC Decision 2, Trans. ID 67581374.
[33] Williams' Opening Br. 13.

7

Commission's decision.[34] Commissioner Stegemeier commented, "I don't think we can look at it in terms of what the [RMTC's] decision may be or what the ruling may be in January or February. It's what it was at the time the race took place."[35] And Chairman Patterson stated,

> As much as I want to hear from her, I have to agree with my fellow commissioners that it's not relevant regarding this medication. There was a positive found. Regardless of the – whether it's performance-enhanced or not, the medication was found. And, therefore, our rules that – state that there would be a disqualification on any positive.[36]

The Commission has broad discretion to determine what evidence it will or will not hear.[37] Accordingly, the Court finds the Commission did not abuse its discretion.

## B. The Chairman's Statements to Commissioner Killeen Do Not Constitute an Error of Law

Williams also argues that Chairman Patterson's "statements to Commissioner Killeen to secure the deciding vote to uphold the Stewards' Ruling constitute legal error." Specifically, Williams takes issue with the Chairman's statement: "Okay. Debbie, I'm going to kill you."[38] Williams alleges that by making this statement just before the deciding vote was cast, Commissioner Patterson "wrongfully 'strongarmed' Commissioner Killeen into agreeing with him."[39] He further argues

---

[34] *See generally* DTRC Hr'g Tr.
[35] *Id.* at 75:17-20.
[36] *Id.* at 78:15-22.
[37] 3 Del. Admin. C. § 1001-19.5.10.
[38] Williams' Opening Br. 15-16
[39] *Id.*

that the Chairman's statement is part of a broader pattern of behavior, indicating a predisposition to denying Williams' appeal.[40]

Though Williams' argument suggests that Chairman Patterson's behavior at the hearing constitutes legal error, the Court finds that his claim implies that the Commission's decision to uphold the Stewards' Ruling was not based on substantial evidence. Thus, the Court will address both points in turn below.

    1.  The Commission's decision to uphold the Stewards' Ruling is supported by substantial evidence.

In their Ruling, the Stewards found Williams in violation of DTRC Rules 15.1.1.1,[41] 15.1.3,[42] 15.3.1,[43] and 15.18.[44] The Stewards found a violation because a post-race blood sample indicated the presence of Amicar, which "is not an allowable medication in Delaware, not to exceed the level of detection in blood."[45] In accordance with DTRC Rule 15.18 and ARCI Uniform Classification Guide, the

---

[40] *Id.* at 1.

[41] "No horse participating in a race shall carry in its body any substance foreign to the natural horse, except as hereinafter provided." 3 Del. Admin. C. § 1001-15.1.1.1.

[42] *Id.* § 1001-15.1.3 (relating to "Foreign Substances"). With one limited exception not relevant here, "[n]o horse participating in a race shall carry in its body any foreign substance . . ." *Id.* § 1001-15.1.3.1.

[43] *Id.* § 1001-15.3.1 "Any person found to have administered or authorized a medication, drug or substance which caused or could have caused a violation of Rules 15.1 or 15.2, or caused, participated or attempted to participate in any way in such administration, shall be subject to disciplinary action."

[44] "The Commission hereby adopts by reference the ARCI Uniform Classification Guidelines for Foreign Substances, Version 14.4, December 2020. If there is any inconsistency between the Commission's regulations and the ARCI Uniform Classification Guidelines for Foreign Substances, the provisions of the Commission's regulations shall prevail." *Id.* § 1001-15.18.

[45] Stewards' Ex. 6. As classified by the ARCI Uniform Classification Guidelines for Foreign Substances, Amicar is a "class 4 drug with a C penalty." *Id. See also* Stewards' Ex. 8, at 1, 29.

Stewards' imposed a penalty requiring that Dream Marie be disqualified from first place for the purpose of receiving purse money, and requiring Williams to return the purse money earned by Dream Marie for redistribution.[46] Williams was also assigned 0.5 penalty points for the violation.[47] At the hearing before the Commission, Williams stipulated to the presence of Amicar in Dream Marie's post-race blood sample, thereby establishing a prima facia case for the violation.[48] And, after a lengthy hearing, the Commissioners voted to uphold the Stewards' Ruling, stating "the rules are the rules,"[49] and "I think we should uphold the [S]tewards . . . you did what we asked you to do. . . . And if the rules change, they change."[50] Thus, the Court finds that the Commission's decision is supported by substantial evidence.

> 2. There is no evidence to suggest Chairman Patterson unduly influenced the Commission's decision.

Williams argues that the Commission, through Chairman Patterson, committed legal error. In support of his argument, Williams cites *Quaker Hill Place v. Saville*[51] for the proposition that "administrative officials must conduct proceedings with impartiality and proper decorum[, and] . . . that any tribunal

---

[46] Stewards' Ex. 6.
[47] *Id.* The Stewards did, however, waive the recommended $1000 fine due to mitigating circumstances.
[48] DTRC Hr'g Tr. 85:18.
[49] *Id.* at 99:9.
[50] *Id.* at 103:2-5.
[51] 523 A.2d 947 (Del. Super.).

10

permitted by law to hear and decide cases must not only be unbiased[] but also avoid any appearance of bias."[52]

As the Commission correctly notes, Williams' reliance on this single case is strained. In *Quaker Hill*, the Chairman of the State Human Resources Commission made baseless allegations that the appellant and the Attorney General colluded, sent inflammatory and accusatory letters to the Attorney General after issuing its ruling, and awarded relief not provided for under the law. The Court found that the Commission had "ignored the mandates of due process and fairness, did not correctly allocate the burden of proof of discrimination, and [] its findings of fact, inferences, deductions and conclusions [were] not supported by substantial evidence, nor [were] they the product of an orderly and logical deductive process."[53]

The facts of *Quaker Hill* lie in stark contrast to the facts of this case. The Commissioner in *Quaker Hill* acted egregiously and exhibited a personal interest in the outcome of the subsequent appeal. Here, the Record reflects a lengthy hearing, an in-depth discussion between the Commissioners, and an overall adherence to rules and procedure. Williams has presented no evidence to suggest that the Commission's decision was not based on substantial evidence, nor has he presented evidence suggesting that Chairman Patterson's statements had any effect on the

---

[52] *Quaker Hill Place v. Saville*, 523 A.2d 947, 966 (Del. Super.).
[53] *Id.* at 967.

11

outcome of the vote. There is nothing in the transcript that reflects improper deliberations or undue influence. Both before and after Commissioner Killeen cast the deciding vote, she made several statements indicating agreement with the Stewards' Ruling.[54]

## V. CONCLUSION

After careful review, the Court finds that the Commission did not abuse its discretion, there is substantial evidence to support the Commission's decision, and the Commission's decision is free from legal error. Consequently, the Commission's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

cc: Prothonotary

---

[54] DTRC Hr'g Tr. 74:13-21; 95:12-19; 101:3-6.

12