**IN THE SUPERIOR COURT OF DELAWARE**

TIMOTHY HUGHES, )
)
    Claimant-Below, )
    Appellant, )
)
    v. )     C.A. No. N24A-04-002
)
UPS, )
)
    Employer-Below, )
    Appellee. )

Submitted: October 17, 2024
Decided: January 15, 2025

## <u>ORDER</u>

For the reasons below, the decision of the Industrial Accident Board (the "Board") is affirmed.

1.     Claimant Timothy Hughes ("Claimant") was injured in a vehicle collision while working as a delivery driver for UPS ("Employer"). He suffered overnight with severe back pain and went to see a doctor the next day. After testing and consultation with several doctors, it was determined that he was fully disabled[1] from continuing work and diagnosed with osteopenia, a

---

[1] D.I. 4 Decision on Pet. to Determine Additional Compensation Due at 5-7 (Mar. 12, 2024), Trans. ID 72836901 [hereinafter Decision on Pet. to Determine Additional Compensation Due to Injured Employee at page number].

condition that weakens the bones and increases the risk of bone fractures. [2] Two months after the vehicle collision, Claimant was admitted to the hospital with an acute pulmonary embolism, anemia, and pathologic fractures of his back.[3] During his hospital stay, Claimant was also determined to have a previously undiagnosed condition of multiple myeloma, a blood cancer that weakens the bones.[4]

2. Given the seriousness of the cancer diagnosis, it was decided to defer further treatment of his bone conditions pending oncologic treatment for his cancer. Eventually, Dr. Eskander performed spinal fusion surgery, a procedure that permanently joins two or more vertebrae together in the spine, and a laminectomy to remove the lamina bone in the spine.[5]

3. From these facts, it is pretty obvious what the dispute here would be about: was the spinal surgery needed as a result of the accident for which the Employer was responsible under the Worker's Compensation law, or was it a

---

[2] D.I. 4 Dep. of Dr. Eskander at 23 (Jan. 17, 2024), Trans. ID 72836901 [hereinafter Dep. of Dr. Eskander at page number].

[3] Decision on Pet. to Determine Additional Compensation Due at 8.

[4] *Id.* at 5; D.I. 4 Dep. of Dr. Eskander at 23.

[5] D.I. 4 Pet. to Determine Additional Compensation Due to Injured Employee at 11 (Feb. 7, 2023), Trans. ID 72836901.

result of Claimant's multiple myeloma and osteopenia, for which the Employer was not responsible?

4. With the aid of able counsel, Claimant submitted a Petition to Determine Additional Compensation Due to Injured Employee to the Board.[6] The Board reviewed depositions from three doctors. The Claimant's medical witness, Dr. Eskander, testified that "There are features that are consistent with acute injury and there are features that are consistent with more chronic changes, but they really can't be 100 percent definitive on it."[7] Dr. Eskander further testified that a bone broken through trauma – such as a vehicle accident – would always produce substantial and immediate pain,[8] a fact inconsistent with Claimant's testimony that he did not experience substantial pain until the morning after the accident.

5. In contrast, Employer's first medical witness, Dr. Rushton, testified that "There were no findings, or evidence, to suggest a traumatic origin, a traumatic onset, or any acute or chronic changes. These were, unfortunately for

---

[6] *Id.* at 1.

[7] Dep. of Dr. Eskander at 39.

[8] At his deposition, Dr. Eskander stated, "Any time a bone breaks, it causes pain, it doesn't matter how big of how small and it doesn't matter what causes it. If the bone breaks because of osteoporosis, meaning, soft bones, or because of a tumor invading the bone or an infection invading the bone or the bones are really strong and the patient gets hit by a car and the bones break because of that, it doesn't really matter, it causes pain every single time." *Id.* at 14.

3

Mr. Hughes, the direct result of a very advanced level of multiple myeloma. There was no traumatic basis or foundation to the need for care."[9] Employer's second medical witness, Dr. Gelman, agreed with Dr. Rushton's conclusion that the vehicle collision did not cause the spinal fractures.[10]

6.      After considering the contrasting views of the medical witnesses, the Board accepted the "medical opinions of Dr. Rushton and Dr. Gelman over the medical opinions of Dr. Eskander."[11] Thus, the Board concluded that the Claimant failed to meet his burden of proving that the work accident caused the need for surgery.[12]

7.      The Superior Court's "'review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's

---

[9] D.I. 4 Dep. of Dr. Rushton at 24 (Jan. 18, 2024), Trans. ID 72836901 [hereinafter Dep. of Dr. Rushton at page number].

[10] At a deposition of Dr. Gelman, the attorney, Mr. Sean Gambogi, for the Claimant read the following from Dr. Rushton's report, "There is no plausible medical, surgical, posttraumatic, or diagnostic criteria that would support any foundation pertaining to a causal relationship of the incident of December 1, 20221, and the need for lumbar spine surgery considering the contemporaneous review of records and imaging studies." D.I. 4 Dep. of Dr. Gelman at 51 (Jan. 19, 2024), Trans. ID 72836901 [hereinafter Dep. of Dr. Gelman at page number]. In response, Dr. Gelman testified, "I agree with the statement you read from Dr. Rushton's report." *Id.* at 52.

[11] Decision on Pet. to Determine Additional Compensation Due at 21.

[12] *Id.* at 24.

findings of fact and conclusions of law.'"[13] Substantial evidence means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[14] The Superior Court reviews the Board's decisions on questions of law *de novo*.[15]

8.  Reasonable minds may disagree on what caused the Claimant's spinal fractures. But relevant evidence adequately supported the Board's conclusion that the work-related vehicle collision was not the cause. This was a fact finding by the Board that the Court will not disturb because relevant evidence adequately supported it.

9.  In *Nastasi–White, Inc. v. Futty* (Del. 1986), a claimant had osteoporosis, which caused brittle bones.[16] The claimant's vertebra broke while lifting a box weighing 50 pounds at work.[17] The claimant filed a claim with the Board, but the Board decided that "osteoporosis was a pre-existing condition

---

[13] *United Parcel Service v. Willis*, 2024 WL 5039034, at *4 (Del. Super. Dec. 6, 2024) (quoting *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019)).

[14] *Quaile v. Nat'l Tire & Battery*, 2022 WL 2527619, at *4 (Del. Super. July 7, 2022) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[15] *Cantoni v. Delaware Park Racetrack, & Slots*, 2023 WL 2535896, at *3 (Del. Super. Mar. 16, 2023) (citing *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006)).

[16] *Sewell v. Delaware River & Bay Auth.*, 796 A.2d 655, 662 (Del. Super. 2000) (citing *Nastasi–White, Inc. v. Futty*, 509 A.2d 1102, 1104 (Del. 1986)).

[17] *Nastasi–White*, 509 A.2d at 1103.

caused not by any work-related trauma but by the natural process of aging."[18] As a result, the Board held that the broken vertebra was not a compensable injury, even though the injury occurred at work.[19] On appeal, the Superior Court affirmed the Board.[20] Multiple myeloma – like osteoporosis – was not caused by working for the Employer.

10. Claimant asks the Court to consider a decision of the Board – *Peggy Sue Fritts v. Rite Aid*[21] – a decision that apparently was not appealed to this Court. In that case, Ms. Fritts suffered for many years with an arthritic knee, and she knew that replacement surgery was inevitable. She then had a workplace incident in which her knee "locked up" and this precipitated the decision to move up the surgical replacement. The Board held that the knee replacement surgery was compensable because the workplace injury "caused" the need to have it done sooner rather than later.[22]

11. The *Fritts* case comes close, but does not sit *in pari materia* with Claimant here. Here, there was a dispute whether Claimant fractured *any* bones

---

[18] *Id.* at 1104.

[19] *Id.*

[20] *Id.* at 1106.

[21] D.I. 9 Ex. H of Appellant's Opening Br.'s (June 5, 2024), Trans. ID 73316448.

[22] Decision on Pet. to Determine Additional Compensation Due at 10-13, *Peggy Sue Fritts v. Rite Aid*, Hr'g No. 1526742, Indus. Accident Bd. (May 20, 2024).

in his spine when he had the work-related auto accident. On the other hand, fractured spinal bones are apparently part and parcel of multiple myeloma.[23] The workplace injury may have precipitated the doctor visit, but that does not mean the workplace injury caused any fractured bones at all. The burden of proving the accident caused the broken bones was on the Claimant,[24] and the Board was within its prerogative to find that Claimant did not do so.

12.     This case was well litigated on both sides by well qualified attorneys. The Board clearly understood its duty decide the dispute on the facts and the law and did so within the bounds of each. When that has happened, it is not the Court's role to second guess its conclusions.

The Board's decision was supported by substantial evidence and free of legal error, so it is therefore **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

---

[23] The Board noted, "The progression of multiple myeloma diminishes the bone integrity until it ultimately fractures or breaks. No trauma is necessary to cause a fracture although the bones are more susceptible to fracture in the event of a trauma." Decision on Pet. to Determine Additional Compensation Due at 22. Dr. Eskander testified, "So, again, in layman's terms, his bones are soft, and that softness will lend itself to an increased risk of fractures. It doesn't matter what occurs, it's just the higher chance. So he could lift something, he could roll out of bed, he could get into a car accident, he can have any event, but his bones are more prone to breaking . . ." Dep. of Dr. Eskander at 17.

[24] The "claimant bears the burden of proving that the injury was work-related." *Strawbridge & Clothier v. Campbell*, 492 A.2d 853, 854 (Del. 1985) (citing *Johnson v. Chrysler Corp.*, 59 Del. 48, 51, 213 A.2d 64, 66 (Del. 1965)).